## WILLCOX, PECK & HUGHES v. ALPHONSE WEIL & BROS. et al.

District Court, S. D. New York. November 17, 1927.

1. Shipping ⟨key⟩189—As respects general average, every risk affecting enterprise as whole affects every portion of property engaged until separated.

In general average, the enterprise is necessarily considered as a whole, and though, in apportioning the loss, regard is had to the interest of respective parties, in other respects no separate interest is recognized, and until some portion of the property has been separated from the rest to the exclusion of any common interest with it, every risk affecting the enterprise as a whole must be regarded as affecting each portion of the property engaged.

2. Shipping ⟨key⟩195—Every owner may withdraw his portion of cargo on paying freight, and be free from contribution for subsequent general average.

Every owner has a right at any time, on payment of freight for the entire voyage, to

withdraw his portion of the cargo before termination of the voyage, and cargo thus withdrawn is exempt from contribution for any subsequent general average loss or expense; tie connecting cargo owners being accidental, not conventional or contractual.

**3. Shipping ⊕⇒195—Only where cargo is saved and delivered in continuous operation does cargo owner remain liable for contribution for subsequent general average.**

Only in cases where cargo is saved and delivered in the course of a continuous operation does common interest of various cargo owners continue after delivery of portion of cargo to owner, as respects liability for subsequent general average losses or expenses.

**4. Shipping ⊕⇒195—Cargo owner may reclaim cargo on paying charges to avoid further sacrifice, where vessel is in refuge port, requiring extensive repairs.**

When a cargo owner finds vessel with his cargo on board in a port of refuge, needing repairs which can be effected only at a cost to him of more than he would lose by taking his property at that place and paying the vessel her lawful charges against him, he may pay the charges and reclaim his property, since law does not require him to submit to a sacrifice of his own interest for benefit of others.

**5. Shipping ⊕⇒200—As respects cargo owner's liability for general average, whether common interest remains in case of misfortune is question of fact.**

Whether, in case of misfortune, a common interest remains, so as to make cargo owner, taking delivery of his cargo, liable for contribution for general average expenses or losses subsequently arising, is question of fact, depending on the circumstances.

**6. Shipping ⊕⇒195—Assent of underwriters to towage of vessel from refuge port to destination held not to bind cargo owner as respects subsequent general average.**

Assent of underwriters of cargo to towage of vessel from port of refuge to port of destination did not bind cargo owner, who elected to take delivery of cargo at port of refuge, as respects liability to contribute to general average expenses or losses subsequently occurring.

**7. Shipping ⊕⇒195—Cargo owners held entitled to delivery at port of refuge, without liability to any general average contribution respecting continuance of voyage to port of destination.**

Where hides landed at port of refuge in connection with survey of damage to vessel were one-third damaged by salt water, and would have sustained further damage by transportation to port of destination, to which vessel was towed to save expense of unloading, storage charges, and reloading, which would have been incurred if the extensive repairs required were made at port of refuge, *held*, that cargo owners, having paid bill of lading freight and secured payment of general average contribution then due, had absolute right to delivery of cargo at port of refuge free of any liability for general average contribution in respect to continuance of voyage to port of destination.

In Admiralty. Libel by Willcox, Peck & Hughes against Alphonse Weil & Bros. and others. On exceptions to commissioner's report, recommending dismissal of libel. Exceptions overruled, report confirmed, and libel dismissed.

The report of Commissioner Van Vechten Veeder follows:

"Pursuant to the order of this court, dated March 28, 1925, referring this case to me as commissioner for findings of law and fact, I respectfully report as follows:

"This is a libel in a cause of general average by Willcox, Peck & Hughes, trustee under a general average bond, against Edmond Weil and Aaron Weil, trading under the firm name of Alphonse Weil & Bros., shipper of 4,000 salted hides on the British steamship Domingo de Larrinaga from Buenos Aires, via Boston, to New York, and the Insurance Company of North America, underwriter of the cargo. The vessel stranded outside Boston and was towed into the harbor in distress. Upon the discharge of the Boston cargo and the hides and other New York cargo in No. 1 hold, the vessel was found to have sustained serious damage. If permanent repairs were made at Boston, all the cargo would have to be discharged and stored. The alternative was to proceed to New York in tow after temporary repairs. The owners of all the New York cargo, save Weil & Bros., chose to proceed to New York in tow. Weil & Bros., however, demanded and received delivery of their hides at Boston, and the issue is whether they are nevertheless chargeable in general average with their portion of the expense incurred in the transportation from Boston to New York by the vessel in tow. The amount involved is $658.10.

"It appears that on March 6, 1914, at about 7:45 p. m., the Domingo de Larrinaga, bound from Buenos Aires with cargo for Boston and New York, stranded on an uncharted ledge in the vicinity of Baker's Island while trying to make Boston Lightship in a blinding snowstorm. She released herself with her own engines about 8:30 p. m. the same day and anchored. She was making water in the forepeak, No. 1 tank and hold, No. 5 tank, and the tunnel aft. The following day she was towed to Boston and extra pumps were installed, which by continuous pumping, gradually reduced the water in the holds.

"On the 9th the Insurance Company of North America, underwriter on the hides, gave to Willcox, Peck & Hughes, as average adjusters, a guaranty of the hides' propor-

tion of general and special charges in consideration of prompt delivery. Discharge of the Boston cargo was completed March 11. On the 12th the hides and other New York cargo were unloaded from No. 1 hold in order to locate the leak; the hides being found 33⅓ per cent. damaged by seawater. It was found that the vessel was leaking in No. 1 hold from damaged and cracked shell plating and broken rivets; that there was a crack in the shell plating at the after peak, and other damage aft. Upon subsequent dry-docking at New York it was found that the back post and shoe portion of the stern frame were broken off and missing, the rudder missing and upper stock twisted, keel and shell plating broken and buckled in several places, and riveting started, propeller broken, main and auxiliary machinery strained and damaged, boilers salted, and deck and engine room equipment damaged.

"To repair at Boston, it would have been necessary to discharge and store the greater part of the New York cargo and dry-dock the steamer. The only alternative was to make temporary repairs and tow the steamer with the New York cargo to New York. The latter course was recommended in order to save the expense of discharging, storing, and reloading cargo, and other incidental expenses at Boston, in case of repairing there, and assent to the latter course, dated March 12, was given by the Insurance Company of North America and other cargo underwriters interested. Temporary repairs were made, and tugs were engaged to do the towing.

"On the 13th the consignee of the hides demanded delivery thereof at Boston. Messrs. Willcox, Peck & Hughes thereupon demanded, on the 14th, as a condition of such delivery, a special agreement subjecting the hides to the same general average as if carried in the steamer to New York and delivered there. Neither consignee nor underwriter of the hides agreed to this demand. On the same day, however, the consignee of the hides signed the usual average bond and obtained delivery of the hides at Boston, upon payment of bill of lading freight, and with notice from Messrs. Willcox, Peck & Hughes that such delivery was not to be considered as prejudicing any rights of the vessel and associated interests to demand contribution in general average as if retained on the vessel and brought in her to New York. It is admitted that the hides were one-third damaged by sea water when unladen at Boston and that they might sustain

further damage, if reladen and carried in the ship in tow.

[1, 2] "In general average, the enterprise is necessarily considered as a whole. In apportioning the loss, regard is had, of course, to the interest of the respective parties; but in other respects no separate interest is recognized. Until, therefore, some portion of the property has been separated from the rest to the exclusion of any common interest with it, every risk which affects the enterprise as a whole must be regarded as affecting each portion of the property engaged. Such separation frequently occurs in the course of a voyage, as, for instance, in case of jettison; or a separation may occur through the withdrawal of a portion of the cargo before the termination of the voyage. This every owner has a right to do at any time, on payment of freight for the entire voyage, and the cargo thus withdrawn is exempt from contribution for any subsequent loss or expense. In other words, while the property remains connected, the owners have a common interest in the enterprise; but the tie which connects them, being purely accidental, not conventional or contractual, may be broken at will at any time by any of the parties. Nelson v. Belmont, 21 N. Y. 36; McAndrews v. Thatcher, 3 Wall. 347, 18 L. Ed. 155.

[3] "It is only in cases where cargo is saved and delivered in the course of a continuous operation that the common interest continues after delivery of cargo to the owner; inasmuch as all interests may not be brought to safety at one time, the community of interest in respect of the entire operation is deemed to continue from the inception of the operation. Pacific Mail Steamship Co. v. Mining Co. (C. C. A.) 74 F. 564; Reliance Marine Insurance Co. v. New York & Cuba Mail Steamship Co. (C. C. A.) 77 F. 317; Nelson v. Belmont, 21 N. Y. 36; Moran v. Jones, 7 El. & Bl. 523.

[4] "Sacrifice on the part of any interest is justifiable only when it is for the benefit of all; neither ship nor cargo can be required to make a vicarious sacrifice. When, therefore, a cargo owner finds a vessel with his cargo on board in a port of refuge needing repairs, which can be effected only at a cost to him of more than he would lose by taking his property at that place and paying the vessel her lawful charges against him, he may undoubtedly pay the charges and reclaim his property. The law does not require him to submit to a sacrifice of his own interests for the benefit of others. The

Julia Blake, 107 U. S. 418, 2 S. Ct. 692, 27 L. Ed. 595.

[5] "Whether, in case of misfortune, a common interest still remains, is a question of fact, depending on the circumstances. The L'Amerique (D. C.) 35 F. 835. The sole justification of the towage venture here in question was the alleged saving of expense involved in unloading, storing, and reloading cargo, if the vessel were repaired at Boston. The hides in question had been unloaded in connection with the survey of damage to the vessel, and the acceptance of delivery by the consignee eliminated from the common charge the cost of their storage or reloading and discharge at New York. But the significant fact is that these hides were admittedly landed at Boston one-third damaged by salt water, and would inevitably have sustained further damage during slow transportation to New York. The towage venture therefore involved further sacrifice by the consignee of the hides for the benefit of the other New York cargo, to which the consignee could not be required to submit.

"Unless, therefore, the special circumstances of this case take it out of the general principle, the respondents are not liable. Certainly there was no agreement on the part of the respondents to subject the hides to contribution in general average as if delivered at New York. On the contrary, the respondents expressly refused to be so bound.

"But the libelant asserts that the consignee's decision to take delivery at Boston came too late. Arrangements for the towage to New York had by this time been substantially completed, and the libelant's argument appears to be that the respondents were thereby committed beyond recall to contribution to the expense of the voyage to New York.

[6] "Arrangements made prior to the 12th indicate an intention to proceed with the towage venture upon the assumption that sufficient cargo would participate to make it economical. The assent of the underwriters on the hides on the 12th imported only that, so far as its interest as surety was concerned, it was then willing to proceed. It does not appear that the consignee of the hides ever assented to the towage venture. The statement, in a letter written by the ship's agent on the 12th, that the consignee had refused to take delivery at Boston on the 12th, if accepted as a fact, creates no estoppel. But it is a complete answer to the libelant's contention that there is no proof that the participation or withdrawal of the hides in question influenced or affected in any way the decision to proceed to New York in tow. The contributing value of the 4,000 hides was only $29,000, as compared with a contributing value of $293,000 for the other New York cargo. It seems a fair inference that the withdrawal of the hides in question would not, if announced at the outset, have altered the decision to proceed to New York in tow.

[7] "In my opinion, the consignee of the hides, having paid the bill of lading freight, and secured generally, in the manner requested, the payment of such general average contribution as might be due, had an absolute right to the delivery of the cargo at Boston, free of any such condition as was sought to be imposed; and the hides were not in fact subject to any general average contribution in respect of the continuance of the voyage to New York in tow. My conclusion is that the libel should be dismissed, with costs."

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, for libelants.

Harrington, Bigham & Englar, of New York City, for respondents.

THACHER, District Judge. The case is here on exceptions to the commissioner's report. There is little to be added to the carefully considered report of the learned commissioner. In his findings of fact and conclusions of law I concur. The right of the shippers to a separation of their cargo at Boston is clear, under the rule in The Julia Blake, 107 U. S. 418, 2 S. Ct. 692, 27 L. Ed. 595. The fact stipulated and found, that transportation on the ship from Boston to New York would subject this part of the cargo to serious risk of further damage, relieved the cargo owners from liability for all expense incurred in continuing the voyage to destination. Such expense, whether incurred before or after the physical separation and the owners' assent thereto, was not incurred for the benefit of this cargo.

In the face of serious risk of further damage involved in carrying these hides to New York, the master of the ship was unauthorized to subject this portion of the cargo to the payment of any portion of the expense of continuing the voyage, and was under the duty to make the separation himself in behalf of the owners if it was in their interest to do so. The Julia Blake, supra. It cannot, therefore, be successfully argued that any portion of this expense was incurred on the faith of any contribution to be made under the laws of general average by the owners of these hides. As the learned commissioner has well said, the law imposes no such

vicarious sacrifice. There is no evidence in this case that the owners refused delivery at Boston, after the risk of additional injury involved in the carriage to New York became known to them. Under these circumstances, I concur in the conclusion of the commissioner that the cargo owners are not liable for any portion of the expense incurred in the continuance of the voyage from Boston to New York.

Accordingly the exceptions to the commissioner's report are overruled, the report is confirmed, and a decree may be entered, dismissing the libel, with costs.